**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| James D. Speros,<br><br>         Plaintiff,<br><br>v.<br><br>Sentinel Insurance Company Limited,<br><br>         Defendant. | No. CV-14-00224-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff James D. Speros's Application to Confirm (in Part) Appraisal Award (Doc. 73, Applic.), to which Defendant Sentinel Insurance Company, Ltd. filed a Motion Opposing Application to Confirm (in Part) Appraisal Award and Counter-Motion to Vacate Appraisal Award (Doc. 79, Mot. to Vacate), Plaintiff filed a Response to Counter-Motion to Vacate Appraisal Award and Reply in Support of Application to Confirm (in Part) Appraisal Award (Doc. 84, Resp.), and Defendant filed a Reply to Plaintiff's Opposition to Motion to Vacate Appraisal Award (Doc. 92, Reply).

**I.     Plaintiff's Application to Confirm (in Part) Appraisal Award**

In his Application, Plaintiff asks that the Court apply 9 U.S.C. § 9 to confirm the Appraisal Award reached by two appraisers and a Court-appointed umpire and issued on March 30, 2017 (Doc. 71-1 at 2-7, Award). Plaintiff bases the request on a provision of the operative insurance policy, which states that Defendant will pay any loss amount within 30 days after Defendant receives proof of loss and "1) Reach[es] an agreement with [Plaintiff]; 2) There is an entry of final judgment; or 3) There is a filing of an

appraisal award with [Defendant]." (Applic. Ex. 3.) Because appraisals in the insurance context are like arbitrations under Arizona and federal law, *see, e.g.*, *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365, 1369 (Ariz. Ct. App. 1994), Plaintiff invokes the federal statute addressing arbitration awards, 9 U.S.C. § 9, which provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, . . . then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

Section 10 of that title provides in part that a court may vacate an arbitration award upon application by any party if the award "was procured by corruption, fraud, or undue means" or "there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a). Similarly, under Arizona law, a court "shall decline to confirm and award and enter judgment [on an arbitration award] where . . . [it] was procured by corruption, fraud, or other undue means [or] [t]here was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party." A.R.S. § 12-1512(A). These nearly identical provisions are derived from the Uniform Arbitration Act. *See Hirt v. Hervey*, 578 P.2d 624, 626 (Ariz. Ct. App. 1978).

The next section of the federal code provides in part that a court may modify or correct an arbitration award upon application by any party "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). Arizona law has the same provision, codified at A.R.S. § 12-1513(A). Thus, where the parties have agreed that a disputed value shall be finally resolved by an appraisal, the appraisal award is "entitled to finality in all but narrowly defined circumstances," and thus "the award is not

subject to attack merely because one party believes that the [appraisers] erred with respect to factual determinations or legal interpretations." *Hirt*, 578 P.2d at 626.

Here, the parties' agreement, by way of the operative insurance policy, provides that payment of an appraisal award requires *both* proof of loss and a valuation by way of the appraisal award. Defendant has never agreed that the proof of loss portion has been satisfied, particularly in light of the fact that multiple events occurred and caused damage to Plaintiff's property but the Court has found Defendant agreed to cover only one event—the water line leak near the fountain in the courtyard of the property. At this point, a dispute between the parties remains as to proof of loss from the covered event, as opposed to loss from other events.

Put another way, in its prior Order, the Court stated:

> It is the function of the appraisers to arrive at a figure representing appraised damages for a covered event, and they have done so, in the alternative, as set forth above. It is for the Court, or the ultimate finder of fact, to determine causation of the damage to the home—in other words, whether the appraisers are right or wrong about the scope of causation. If the Court or the finder of fact concludes the appraisers are correct, the appraisers' larger damages number comes into play. If not, the smaller number they arrived at—representing the geographic limitation—may apply, *or another number*, depending on the finder of fact's ultimate conclusion as to the limits of causation. . . . *See, e.g.*, *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 473-75 (5th Cir. 2013).

(Doc. 72, Order at 2-3 (emphasis added).)

Because proof of loss related to the covered event is not yet resolved, the Court cannot grant Plaintiff's Application for immediate payment of the Appraisal Award under the insurance policy. Plaintiff argues that it is entitled to "at least the incontestable portion" of the Appraisal Award—the value of the damage to the property within the geographic limits initially set by the Court (Applic. at 5-6)—but, as the Court stated in its prior Order, resolution of the causation issue may lead to another number within the Appraisal Award.

**II.     Defendant's Motion to Vacate Appraisal Award**

In response to Plaintiff's Application, Defendant moves to vacate the Appraisal Award on two independent grounds: (1) Plaintiff had a prior, undisclosed relationship with one of the appraisers; and (2) the Appraisal Award exceeds the scope of appraisal by including a valuation of the cost of content removal from the property, lost rental income, and the cost to investigate. (Mot. to Vacate at 13-16.)

As a threshold matter, Defendant challenges the Court's decision to compel appraisal to begin with (*see* Mot. to Vacate at 1-2), a decision that the Court entered nearly three years ago, on May 13, 2015 (Doc. 37, Order Compelling Appraisal). In response, Plaintiff takes great issue with Defendant's attempt to re-litigate matters already decided by the Court. (Resp. at 3-7.)

As the Court noted in its decision to compel appraisal, enforcement of an appraisal clause to compel appraisal is appropriate when the parties agree as to the covered loss and the disagreement is to the amount of damage. *See Harvey Prop. Mgmt. Co. v. Travelers Indem. Co.*, No 2:12-CV-01536-SLG, 2012 WL 5488898, at *3-4 (D. Ariz. Nov. 6, 2012). Because Defendant did not oppose the proposition that it had explicitly agreed to cover damage from the courtyard water line leak—which it termed a "very narrow subset of Plaintiff's claimed loss" (Doc. 31, Resp. to Mot. to Compel Appraisal at 11)—and only opposed coverage for other leaks on the property, such as sewer line leaks, the Court found that appraisal was appropriate based on the parties' agreement that at least the courtyard water line leak was covered. Although Defendant changed counsel after submitting its brief on Plaintiff's Motion to Compel Appraisal (but some three months before the Court ruled on the Motion) (Doc. 35), the change of counsel does not provide an excuse for Defendant's failure to oppose, *to this Court*, the proposition that Defendant agreed that Plaintiff's insurance policy covered any damage to the property caused by the courtyard water line leak. Indeed, Defendant filed no Motion for Reconsideration of the Court's Order Compelling Appraisal—which was predicated on

Defendant's agreement to cover the specified event—and Defendant participated in the appraisal process for the next two years.

Now, three years later, Defendant's Motion to Vacate the Appraisal Award implies that the Court's Order compelling appraisal was unfounded because Defendant never agreed to cover any damage to Plaintiff's property. Defendant contends that it made a mistake in describing the courtyard water line leak coverage to Plaintiff—even though it did so repeatedly and in writing—and that it was Plaintiff who "never informed the Court of [Defendant's] actual coverage position that the damage to his home was excluded under the earth movement exclusion." (Mot to Vacate at 2.) Alas, it was not Plaintiff's burden or responsibility in the Motion to Compel Appraisal to inform the Court of what Defendant now calls its "actual coverage position" with regard to the courtyard water line leak—it was Defendant's. Defendant had a full and fair opportunity to do so three years ago, and had access to all of the relevant information at that time. Yet Defendant did not try to demonstrate, *to this Court*, that it did not agree to cover *any* of Plaintiff's property damage until two years after the Court had entered an Order compelling appraisal.

Thus, the estoppel or preclusive effect at work here is not simply as Defendant frames it (Mot. to Vacate at 2 n.1), that is, whether Defendant is precluded from denying coverage by its explicit representations in writing to Plaintiff that damage from the courtyard water line leak was covered. The question is whether Defendant can now argue *to this Court* that it never agreed to cover the courtyard water line leak when it failed to demonstrate that—or even demonstrate that a genuine dispute existed—in conjunction with its brief in response to the Motion to Compel Appraisal.[1] The Court ordered appraisal in reliance on the coverage agreement between the parties, and appraisal could

---

[1] Indeed, Defendant did not make this argument until it filed a motion for summary judgment on June 7, 2017, two years after the Court's Order compelling appraisal. (Doc. 82.) The Court denied that motion pending resolution of the present motions.

not have been ordered absent the Court's finding that the parties agreed that the policy covered the courtyard water line leak. Defendant presents no new facts in now making an argument it could have made years ago.

It is the doctrine of "law of the case" that may prevent Defendant from attempting to demonstrate to the Court that Defendant did not agree to cover the damage to Plaintiff's property from the courtyard water line leak. "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Minidoka Irrigation Dist. v. Dep't of Interior of U.S.*, 406 F.3d 567, 573 (9th Cir. 2005) (quoting *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002)); *see also United States v. Johns*, 154 Fed. App'x 646, 647 (9th Cir. 2005) (concluding that reconsideration of factual findings leading to sentence was barred by the law of the case doctrine where no new evidence was presented and no other exceptions to doctrine applied). "[T]he law of the case doctrine is subject to three exceptions that may arise when '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Minidoka Irrigation Dist.*, 406 F.3d at 573 (quoting *Old Person*, 312 F.3d at 1036).

Without application of this preclusive doctrine, the parties will have been heavily prejudiced by the waste of time and resources in engaging in a years-long appraisal process. Although Defendant states it "does not seek a coverage ruling" in its Motion or Reply (Reply at 2), the Court advises the parties that any request for a "coverage ruling" must address the Court's concerns set forth above, including whether Defendant is precluded by the law of the case doctrine (or an analogous proposition) from arguing for less coverage than the Court has already determined the parties agreed to, whether Defendant can seek reconsideration of the Court's decision far beyond the deadline for filing a motion for reconsideration under the Local Rules, and how the prejudice resulting from a substantial waste of time and resources is to be addressed.

Presuming the appraisal was well-founded, as it must, the Court will now address whether Defendant has demonstrated either of the two grounds on which it argues the Appraisal Award should be vacated.

### A. Prior Relationship Between Plaintiff and Appraiser

As the Court laid out above, under both federal and Arizona law, the Court may set aside an appraisal award if there is "evident partiality by an [appraiser] appointed as a neutral." A.R.S. § 12-1512(A); *see also* 9 U.S.C. § 10(a). Defendant cites cases from other states to argue that a party has a duty to disclose a prior relationship with an appraiser and that the requirement that an appraiser be impartial is violated if the appraiser has a relationship with a party. (Mot. to Vacate at 13-14.) Defendant contends that the Court should vacate the Appraisal Award because Plaintiff 1) failed to disclose his relationship with his appraiser, Mr. Berger, at the Examination Under Oath ("EUO"), and 2) "hedged and obfuscated" as to his relationship with Mr. Berger in the mutual disclosures made at Plaintiff's request.

In his Response, Plaintiff states that he was an appraiser himself and knows Mr. Berger from the period in which he too conducted appraisals. (Resp. at 10.) As for the EUO, which took place in 2013, well before the parties chose appraisers in this lawsuit, Plaintiff disclosed that he knows Mr. Berger and has been the opposing appraiser to him many times. (Resp. at 12.) Defendant was thus unquestionably on notice that Plaintiff and Mr. Berger had a professional relationship well before Plaintiff chose Mr. Berger as his appraiser. Defendant provides no evidence that there was something untoward in the relationship that would lead the Court to conclude that Mr. Berger was not impartial.

As for the parties' mutual disclosures, Plaintiff filed a Summary of Discovery Dispute with the Court on November 17, 2015. (Doc. 47.) In that document, Plaintiff provided evidence that Plaintiff's counsel had suggested that the parties exchange a disclosure of any engagements their chosen appraisers had had with the parties during the past three years. Defendant's counsel stated she "did not believe the disclosures are

required by Arizona law" but agreed to the disclosures "to get the appraisal moving." (Doc. 47-1 at 2.) For Plaintiff, Mr. Berger disclosed that he "was involved in a few appraisals where [he] was the appraiser appointed by the insured(s) and [Plaintiff] was the appraiser appointed by the insurance carrier(s)" and that Plaintiff "served as an umpire in the appraisal process wherein he was agreed upon by the other appraiser and myself (as appraiser) on two occasions." (Doc. 47-1 at 6.) For his part, Defendant's appraiser disclosed he had worked on two cases for the law firm of Defendant's counsel in the past three years, and his company had worked on two cases for Defendant in the past three years. (Doc. 47-1 at 5.) Concerned about impartiality, it was Plaintiff who then asked for Defendant's appraiser to disclose the names of the cases he worked on and the capacity in which he was engaged, and Defendant resisted disclosure, leading to the discovery dispute hearing before the Court. (Doc. 47.)

Although Defendant itself never proposed mutual disclosures and resisted providing details to Plaintiff, Defendant now argues that the disclosures were insufficient because Plaintiff had hired Mr. Berger four years prior for an appraisal, and the "look back" period proposed by Plaintiff was three years. The Court notes that the very nature of a fixed "look back" period is that, beyond that period, an additional disclosure might be required. Defendant never objected to the three-year period—indeed it never expressed an opinion that mutual disclosures were required at all—and thus cannot be heard to complain about the lack of disclosure of a professional relationship between Mr. Berger and Plaintiff four years prior. Moreover, as in the EUO, Plaintiff and Mr. Berger openly disclosed that they had worked together or opposite to one another, even within the three year period, yet Defendant did not object. *See Fidelity Fed. Bank v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004) (concluding that, "where a party to an arbitration has constructive knowledge of a potential conflict but fails to timely object," the party waives its right to object). None of the facts Defendant provides in its lengthy recitation of appraisal events enable the Court to conclude that Mr. Berger colluded with Plaintiff or acted without impartiality. As Plaintiff contends, Defendant's

1 argument amounts to a disagreement with the results of the appraisal more than a legal
2 basis for the Court to vacate the Appraisal Award. For these reasons, the Court will deny
3 Defendant's request to vacate on this basis.

### B. Scope of Appraisal Award

Defendant next moves to vacate the Appraisal Award by arguing that it exceeds the scope of the request for appraisal by including a cost of content removal, loss of rental income, and investigation costs. (Mot. to Vacate at 16.) For support, Defendant relies on *Hanson v. Commercial Union Insurance Company*, in which the Arizona Court of Appeals stated that appraisers must decide only issues within the "scope of the submission agreement," and appraisers' acts that exceed their authority are not binding on the parties. 723 P.2d 101, 103-104 (Ariz. Ct. App. 1986). The appraisers' affidavit in that case did not allow the Court to determine which portion of the net appraisal award was within the scope of the submission agreement and which portion exceeded the scope. *Id.* at 104.

The Court first notes that the Appraisal Award in this instance is itemized, and any individual portion of the appraised amount that exceeded the appraisers' authority by providing a value for damage beyond that contemplated by the policy, or for some other reason, is not binding on the parties. But that does not mean that the entire Appraisal Award must be vacated. As the Court stated above, under both Arizona and federal law, an Appraisal Award may be modified or corrected. *See* 9 U.S.C. § 11(a); A.R.S. § 12-1513(A).

In its prior Order, the Court noted that it may not limit the appraisers' valuation of damage caused by a covered event, including by specifying a geographic boundary where the boundary does not have a rational relationship to actual causation of the damage or lack thereof. (Doc. 72, Order at 2.) The Court tasked the appraisers with arriving at a figure representing the damages for a covered event—the courtyard water line leak on Plaintiff's property. (Doc. 72, Order at 2.) Here, aside from asking the Court to vacate the entire Appraisal Award for exceeding the scope of the appraisal request—a proposition for which the Court finds no support—Defendant does not provide any detail regarding

why it believes the cost of content removal, loss of rental income, or cost to investigate are not allowable damages arising from the covered event. In the absence of any support, the Court must decline to modify the Appraisal Award.

The balance of Defendant's argument takes issue with the size of the final appraised amount of damage. (Mot. to Vacate at 16.) As the Court noted above, a motion to vacate may not be based solely on disagreement with the appraisal amount. *See Hirt*, 578 P.2d at 626. For all of these reasons, the Court will deny Defendant's Motion to Vacate the Appraisal Award.

### III. Conclusions

This is a case in which the evidence indicates that multiple events may have caused damage to Plaintiff's property, and the Court has only found that the parties agreed as to coverage for damage arising from the courtyard water line leak—damage on which the Appraisal Award has now put an itemized value. However, the Court or finder of fact must determine causation, and the Appraisal Award can then be overlain on that causation determination to resolve the value of damages, which may be the Appraisal Award's larger number, its smaller number, or some other number within the Award, depending on the limits of causation. For this reason, the Court cannot yet confirm the Appraisal Award. On the other hand, Defendant has not demonstrated a basis for the Court to vacate the Appraisal Award.

**IT IS THEREFORE ORDERED** denying Plaintiff's Application to Confirm (in Part) Appraisal Award (Doc. 73).

**IT IS FURTHER ORDERED** denying Defendant's Counter-Motion to Vacate Appraisal Award (Doc. 79).

Dated this 29th day of March, 2018.

Honorable John J. Tuchi
United States District Judge